IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KURTIS M. WILLIAMS,
      Petitioner,

vs.                                               Case No.: 1:16cv133/WTH/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (ECF No. 12). Petitioner filed a response in opposition to the motion, with a supporting affidavit and exhibits (ECF Nos. 16, 19).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the

undersigned that the pleadings and attachments before the court show that Respondent's motion to dismiss should be granted, and the habeas petition dismissed as untimely.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted in the Circuit Court in and for Lafayette County, Florida, Case No.  96-CF-16, on one count of first degree premeditated murder while armed (Count I) and one count of robbery while armed with a firearm (Count II) (Ex. A). [1]  On August 25, 1997, Petitioner entered a written plea agreement, pursuant to which he agreed to enter a no contest plea to the charges in exchange for the State's agreement to the following:

> NOT SEEK IMPOSITION OF THE DEATH PENALTY AND RECOMMEND THAT DEFENDANT BE SENTENCED TO LIFE IMPRISONMENT, WITH THE RECOMMENDATION THAT DEFENDANT BE TRANSFERRED TO ILLINOIS FOR SERVICE OF SAID SENTENCE, ALL PERSONAL ITEMS SIEZED [SIC] THAT DO NOT HAVE EVIDENTIARY VALUE WILL BE RETURNED.

(Ex. B).  The same day, the court conducted a colloquy and accepted the plea (Ex. F at 140–70).   The court sentenced Petitioner to life imprisonment, without the possibility of parole, and with a 3-year minimum mandatory, on Count I (Ex. D, Ex.

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (ECF No. 12) unless otherwise indicated.  Additionally, if a cited page has more than one page number, the court cites to the "Bates stamp" page number.

F at 140–70).  The court sentenced Petitioner to a consecutive term of 230 months in

prison on Count II (Ex. D).  The judgment stated:

> In imposing the above sentence, the court further finds that the terms of the plea agreement provided for the consecutive terms of this sentence to be served in the Illinois Department of Corrections, which has been approved by Illinois, transfer to be effected as quickly as possible.

(Ex. D).  Petitioner did not directly appeal the judgment (*see* ECF No. 12 at 2; ECF

No. 16 at 2).

On December 16, 2013, Petitioner filed a motion for post-conviction relief in

the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal

Procedure (Ex. F at 4–20).  In an order rendered September 19, 2014, the state circuit

court denied the Rule 3.850 motion as untimely (Ex. E at 41–42).  Petitioner appealed

the decision to the Florida First District Court of Appeal ("First DCA"), Case No.

1D14-4835 (*id.* at 69–70).  The First DCA affirmed the decision per curiam without

written opinion on April 29, 2015 (Ex. G).  Williams v. State, 166 So. 3d 777 (Fla. 1st

DCA 2015) (Table).  The mandate issued June 22, 2015 (Ex. J).

Petitioner commenced the instant federal habeas action on March 14, 2016

(ECF No. 1).

II.    ANALYSIS

A one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. *See* 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent argues that the appropriate statutory trigger for the federal limitation period in this case is the finality date of the judgment of conviction, pursuant to § 2244(d)(1)(A) (*see* ECF No. 12 at 4).  Respondent asserts that the finality date is September 24, 1997, which is 30 days from August 25, 1997, the date the trial court rendered the judgment and sentence.  Respondent contends Petitioner had one year from September 24, 1997, or until September 24, 1998, to file his § 2254

petition (*id.*).  Respondent contends the instant petition, filed on March 14, 2016, is untimely, because it was filed seventeen-and-a-half years after the one-year federal deadline expired (*id.* at 5).

The court will first calculate the federal filing deadline using the "finality date" trigger, and then determine whether Petitioner has demonstrated that a different trigger applies. The state court record affirms that Petitioner's conviction became final on September 24, 1997, upon expiration of the thirty-day period for filing a notice of appeal of the judgment of conviction rendered August 25, 1997.  The federal statute of limitations began to run on September 25, 1997, the day after the 30-day period for Petitioner to file a direct appeal expired.[2]  Petitioner had one year from that date, or until September 25, 1998, to file his § 2254 petition.  *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira v. Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).

---

[2] Federal Rule of Civil Procedure 6(a) provides that "[i]n computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included."  Fed. R. Civ. P. 6(a); *see also* Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA).

Petitioner contends two of his federal habeas claims, Grounds One and Three, concern "newly discovered evidence" (ECF No. 1 at 5–6, 11–12),[3] thus suggesting that the statutory trigger set forth in § 2244(d)(1)(D) applies.  Under § 2244(d)(1)(D), the federal limitations period begins on the date the factual predicate of a claim or claims could have been discovered, through the exercise of due diligence.

Petitioner asserts this "newly discovered evidence" is a Mental Health Assessment performed on him at the Janet Wattles Center on September 19, 1995 (approximately three months prior to the murder) (*id.*).  A copy of the Mental Health Assessment is part of the state court record (Ex. F at 28–37).  It indicates an initial diagnosis of Post-Traumatic Stress Disorder, Intermittent Explosive Disorder, and Antisocial Personality Disorder (*id.* at 29–33).  A Clinical Summary was prepared by the Center on October 31, 1995 (*id.* at 37).  Petitioner alleges the Mental Health Assessment would have supported an insanity defense, based upon "toxic thyroid insanity," and would have served as a factor in mitigating Petitioner's sentence (ECF No. 1 at 6).  Petitioner alleges if he had known the results of the Mental Health Assessment at the time he entered his plea, on August 25, 1997, he would not have agreed to plead no contest in exchange for a life sentence (*see id.* at 6, 12).  Petitioner

---

[3] The page references to the parties' pleadings reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

alleges he did not obtain a copy of the Mental Health Assessment until 2005, upon his submitting a Freedom of Information Act ("FOIA") request to the Janet Wattles Center (ECF No. 1 at 5; *see also* ECF No. 12, Ex. F at 7, 26–37; ECF No. 12, Ex. H at 3).

The Mental Health Assessment shows that Petitioner referred himself for the assessment at the Janet Wattles Center on September 11, 1995 (*see* Ex. F at 34–37). Petitioner was thus aware, at the time he entered his plea, that he had undergone the Mental Health Assessment three months prior to the murder for which he was charged. Despite this knowledge, Petitioner does not allege he made any effort, let alone a diligent one, to discover the results of the Assessment prior to entry of his plea or prior to the date his conviction became final. Therefore, Petitioner failed to show that the statutory trigger set forth in § 2244(d)(1)(D) applies.

Petitioner also argues that the statutory trigger set forth in § 2244(d)(1)(B) applies (*see* ECF No. 16-2; ECF No. 19). He alleges an impediment to his filing post-conviction applications arose on September 26, 1997, when his copy of the transcript of a pre-trial Faretta[4] hearing, which occurred on March 10, 1997, was confiscated by

_____

[4] In Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the Supreme Court recognized that the Sixth Amendment includes the right to self-representation, but in order for a defendant to represent himself, he must "knowingly and intelligently" waive his right to counsel. 422 U.S. at 831–32, 835–36.

prison officials at the Joliet Correctional Center in Illinois (*id.*).  Petitioner alleges he

had used that copy to file two pre-plea motions with the trial court on August 4, 1997,

specifically, a "Request for Recusal of Judge" seeking to recuse Judge Paul S. Bryan

from the criminal case, and a "Notice of Intent to File Civil Complaint" against Judge

Bryan and Petitioner's public defender, Jimmy Hunt (ECF No. 16-2; ECF No. 19; *see*

*also* ECF No. 12, Ex. F at 118–23, 126–31).[5]  Petitioner alleges by the time he was

able to obtain another copy of the <u>Faretta</u> hearing transcript, through the efforts of

family members and attorneys, he discovered that the transcript had been "seriously

altered" to "protect" Judge Bryan and Public Defender Hunt from the claims

Petitioner made in his "Request for Recusal of Judge" and "Notice of Intent to File

Civil Complaint" (ECF No. 16-2; ECF No. 19).  Petitioner alleges the following

language was removed from the "altered" transcript of the <u>Faretta</u> hearing:

---

[5] In Petitioner's "Request for Recusal of Judge," Petitioner contended Judge Bryan erred by failing to discharge Public Defender Jimmy Hunt and either appoint new counsel, permit co-counsel Lenny Platteborze to act as Petitioner's sole counsel, or permit Petitioner to represent himself (*see* Ex. F at 118–23).  Petitioner alleged Judge Bryan and Public Defender Hunt had a "close association," which prejudiced Petitioner's criminal case (*id.*).

In Petitioner's "Notice of Intent to file Civil Complaint," Petitioner stated his intent to file a civil complaint against Judge Bryan and Public Defender Hunt, asserting conspiracy and other tort claims and seeking punitive damages, "discharge" of Judge Bryan as a judge, and disbarment of Public Defender Hunt (*see* Ex. F at 126–31).

JIMMY HUNT:  Your Honor Lenny Platteborze has not handled a murder case, he is not competent to represent Mr. Williams in the murder phase or trial.  He is doing the investigative portion of the case.

DEFENDANT:  I object!  I object!  I object!  Your Honor thats [sic] a Cannon III violation.  Lenny Platteborze is not present to defend accusations as to his incompetence by Jimmy Hunt!  You have a duty to report this misconduct to the A.R.D.C., and withdraw Hunt immediately.  You know this violates ethics laws!

(ECF No. 16 at 3).  Petitioner alleges that without the "unaltered" copy of the transcript, he was unable to file post-conviction challenges to his plea, on the ground that Judge Bryan's failure to discharge Public Defender Hunt caused Petitioner to proceed with an attorney whom he did not trust and whom provided deficient advice during the plea process (*see* ECF No. 1 at 8–9, 14).  Petitioner asserts he still has been unable to obtain an "unaltered" copy of the transcript of March 10, 1997 (*see* ECF No. 16-2 at 3).

In order to take advantage of § 2244(d)(1)(B), Petitioner must show that (1) there was governmental action, (2) in violation of the Constitution or laws of the United States, (3) which prevented him from filing his § 2254 petition, and (4) which action has been removed.  *See* Akins v. United States, 204 F.3d 1086, 1090 (11th Cir. 2000).[6]  The mere inability of a prisoner to access certain legal materials is not, in

___

[6] Akins involved the one-year time limit for filing a 28 U.S.C. § 2255 motion, which similarly provides for later possible commencement dates.  *See* § 2255(f)(2) (commencing the time

itself, an unconstitutional impediment.  *See id.*  To show an impediment which would trigger the later commencement date for the one-year limitations period, Petitioner must demonstrate both actual harm or injury, that is, that he was actually prevented from exercising his right of access to courts to attack his convictions, and that the impediment was unconstitutional because it was not "reasonably related to legitimate penological interests."  *Id.* (quoting <u>Lewis v. Casey</u>, 518 U.S. 343, 361, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)) (other citations omitted).

In this case, the state court record demonstrates that Petitioner was able to assert collateral challenges to his conviction, including challenges based upon the "altered" transcript, even though he did not have an "unaltered" copy of the transcript of the <u>Faretta</u> hearing (*see* Ex. F at 9–16, Ex. E at 2–13).  Petitioner asserted such challenges in his Rule 3.850 motion and his § 2254 petition, and he did so without an "unaltered" copy of the transcript (*see* ECF No. 1 at 8–9, 14).

Petitioner failed to show that the alleged confiscation of the "unaltered" transcript of the <u>Faretta</u> hearing, allegedly by Illinois prison officials, prevented him from filing a timely § 2254 petition.  Therefore, he failed to demonstrate that § 2244(d)(1)(B) is the appropriate trigger for the federal limitations period.

---

from the date a government created unconstitutional impediment to filing is removed, if the movant was prevented from making a motion by such governmental action).

Because Petitioner has not demonstrated that any of the circumstances enumerated in § 2244(d)(1)(B)–(D) apply in this case, the court must apply the "finality date" trigger of § 2244(d)(1)(A). As previously discussed, applying that trigger results in a deadline of September 25, 1998, for Petitioner to file a timely § 2254 petition. Petitioner did not file his federal petition on or before September 25, 1998; therefore, it is untimely unless he demonstrates that tolling principles apply and render it timely.

A.    Tolling

1.    Statutory Tolling

The federal habeas statute contains the following tolling provision:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

In this case, Petitioner filed a Rule 3.850 motion on December 16, 2013. This post-conviction application did not toll the federal limitations period, because the limitations period had already expired, on September 25, 1998. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000). Therefore, statutory tolling does benefit Petitioner on the timeliness issue.

2.    Equitable Tolling

Petitioner argues he is entitled to equitable tolling of the limitations period (ECF No. 16).  "Because the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d) does not bar the application of equitable tolling in an appropriate case." Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157 (11th Cir. 2014) (citing Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)).  "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649.  As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014). Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the case. Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); see Holland, 560 U.S. at 649–50 (clarifying that the exercise of a court's equity powers must be made on a case-by-case basis).  A petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory. Hutchinson, 677 F.3d at 1099.  "The diligence required for equitable tolling purposes

is reasonable diligence, not maximum feasible diligence." <u>Holland</u>, 560 U.S. at 653;

*see also* <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 703 F.3d 1266, 1271 (11th Cir. 2012)

(per curiam) (acknowledging petitioners are not required "to exhaust every imaginable

option, but rather to make reasonable efforts").   Determining whether a factual

circumstance is extraordinary to satisfy equitable tolling depends not on how unusual

the circumstance alleged to warrant tolling is among the universe of prisoners, but

rather how severe an obstacle it is for the prisoner endeavoring to comply with

AEDPA's limitations period.  <u>Cole</u>, 768 F.3d at 1158 (quotation marks and citation

omitted).

a.    <u>"Fraud"</u>

Petitioner contends he is entitled to equitable tolling of the limitations period

from 1997 to the present, due to the "fraud" committed by Florida and Illinois

officials in altering the transcript of the <u>Faretta</u> hearing and confiscating the

"unaltered" copy from Petitioner's possession (ECF No. 16 at 1–8; ECF No. 16-2).

Petition alleges he has been attempting to obtain an "unaltered" copy of the transcript

from September of 1997 to the present (*id.*).

As previously discussed, Petitioner was able to assert collateral challenges to

his conviction, including challenges based upon the "altered" transcript, even though

he did not have an "unaltered" copy of the transcript of the <u>Faretta</u> hearing (*see* Ex. F at 9–16, Ex. E at 2–13).   Petitioner failed to demonstrate that the alleged "fraudulent" alteration of the transcript and confiscation of the "unaltered" copy from his possession prevented him from filing a timely § 2254 petition.   Therefore, this circumstance does not warrant equitable tolling.

> b.   "Duress and threats"

Petitioner alleges Mr. Robert Oseid, the attorney who represented him in criminal proceedings in Illinois upon his transfer to the Illinois Department of Corrections, subjected him to duress and threats, which caused Petitioner to plead guilty to the Illinois charges on February 4, 1999 (ECF No. 16 at 2, 6–7; ECF No. 16-3 at 199–222).  Petitioner alleges on January 4, 1999, Attorney Oseid advised him that the Illinois prosecutor stated that if Petitioner did not plead guilty to the Illinois charges, the charges would be dismissed, and Petitioner would be returned to the State of Florida (far from his family) to serve his Florida life sentence (*id.*).

Petitioner has not demonstrated that the "duress and threats" he experienced in January and February of 1999 in relation to his Illinois criminal proceedings prevented him from filing a § 2254 petition concerning his Florida convictions by the September

25, 1998 deadline. Therefore, Petitioner is not entitled to equitable tolling based upon those circumstances.

c.    "Fear"

Petitioner alleges he was the victim of threats and physical abuse by law enforcement officials and other inmates during his pre-trial detention in Florida (ECF No. 16 at 2, 8–9; *see also* ECF No. 16-3 at 191–97, 223–25, 235–36). Petitioner alleges the threats and abuse are documented in a Motion for Protective Order filed in the trial court on May 17, 1996 (alleging threats and harassment that occurred on April 23, 1996 and May 10, 1996) and the trial court's granting a protective order on May 29, 1996 (ECF No. 16-3 at 191–97).

Petitioner failed to demonstrate that the incidents of threats and abuse that allegedly occurred during his pre-trial detention prevented him from filing a federal habeas petition during the year following the finality date of his conviction. Therefore, Petitioner is not entitled to equitable tolling based upon those circumstances.

d.    Denial of access to Florida legal resources

Petitioner alleges he has been housed in the Illinois Department of Corrections since September of 1997 (ECF No. 16 at 1, 4). He alleges from 2003 through 2014,

he attempted to obtain Florida legal materials, but was denied access (ECF No. 16 at 9; *see also* ECF No. 16-3 at 148–80).

Even if Petitioner did not have sufficient access to Florida legal resources until December of 2013 (when he was able to file his Rule 3.850 motion), he failed to satisfy the equitable tolling standard. Petitioner does not allege he made any effort, let alone a reasonably diligent one, to obtain access to Florida legal resources until 2003, more than four years after the federal limitations period expired on September 25, 1998. Therefore, Petitioner failed to demonstrate that this circumstance prevented him from filing a timely § 2254 petition.

## III.    CONCLUSION

Petitioner's § 2254 petition was not filed within the one-year statutory limitations period of § 2244(d)(1). Therefore, Respondent's motion to dismiss should be granted, and the § 2254 petition dismissed with prejudice as untimely.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  Miller-El, 537 U.S. at 336 (quoting § 2253(c)(2)).  A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (internal quotation marks and citation omitted); *see also* Buck v. Davis, No. 15-8049, 580 U.S. —, 2017 WL 685534, at *12 (Feb. 22, 2017) (defining the relevant question as whether the district court's decision was "debatable") (citing Miller-El, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (ECF No. 12) be **GRANTED**.

2.      That the habeas petition (ECF No. 1) be **DISMISSED** with prejudice as untimely.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 13<u>th</u> day of March 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**